In re Jean M. SALTZMANN a/k/a Jean Saltzmann, Debtor.

Bankruptcy No. 80–00211.

United States Bankruptcy Court, E.D. Wisconsin.

Nov. 9, 1982.

Paul M. Lohmann, Fiorenza, Weiss, Amato, Hodan & Belongia, S.C., Milwaukee, Wis., for plaintiff Ins. Co. of North America.

J.M. Davis, Waukesha, Wis., for defendant-debtor.

## MEMORANDUM DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Insurance Company of North America ("INA") has applied to reopen the above entitled case. Its purpose is to enable it to file a complaint against Jean M. Saltzmann ("debtor") declaring an alleged debt nondischargeable based upon misappropriation of trust funds by the debtor in her capacity as president, principal stockholder and managing employee of a Wisconsin corporation known as Traveler's Port, Inc.

A chronological sequence of the critical dates preceding the filing of this application is as follows:

January 31, 1980—Debtor filed petition for relief under Chapter 7 of the Bankruptcy Code.

April 18, 1980—INA filed a complaint seeking to declare a debt due it in the amount of $9,000 as nondischargeable.[1]

April 19, 1980—Cutoff date set by the bankruptcy court for the filing of a complaint to determine the dischargeability of a debt.

April 24, 1980—Debtor granted discharge (except as to INA's claim in the pending adversary case filed on April 18, 1980.)

March 20, 1981—INA and debtor enter into stipulation settling their pending adversary case.

April 1, 1981—Court signed order approving stipulation and dismissing adversary case.

March 31, 1981—Debtor's bankruptcy case is closed.

May 4, 1981—INA commenced state court action in Waukesha County Circuit Court upon a separate claim and which claim is the subject of the application herein.

October 16, 1981—Debtor filed motion in bankruptcy court against INA seeking to hold INA in contempt for commencing the state court action.

December 7, 1981—Bankruptcy court declined to hold INA in contempt, but restrained INA from pursuing its state court action pending further order of by bankruptcy court. Bankruptcy court also found that INA had not received notice from the bankruptcy court of cutoff date for filing of complaint to determine dischargeability of debt and authorized INA to apply for an extension of time to file such complaint (but without making any ruling at that time if such extension would be granted).

July 16, 1982—INA filed application to reopen the case and for authority to file the proposed complaint which was the subject of the state court action in Waukesha County Court commenced on May 4, 1981.

The parties have stipulated that prior to April 19, 1980, (and accordingly within the time period to file a complaint to declare a debt nondischargeable), a representative of INA, as well as INA's attorneys, had actual knowledge of the existence of this bankruptcy case and that this knowledge had been received in time sufficiently early to permit the filing of a complaint. What was not stipulated was the identity of the particular representative of INA and whether or not that particular representative had authority to deal with this knowledge.

The thrust of INA's contention is twofold:

1. It lacked actual knowledge of the bankruptcy case; and

2. Even if it had actual knowledge of the case, this knowledge possessed by a representative of INA did not provide ample opportunity for INA to participate in the bankruptcy proceedings.

---

1. This claim arose by virtue of INA's subrogation rights. INA had been required to pay to its insured, Regency National Exchange Bank in Brookfield, $9,000 under a Banker's Blanket Bond, due to the debtor having obtained funds from INA's insured by alleged forgery. It is an entirely separate claim from the claim encompassed in the proposed complaint which is the basis of INA's present application.

Whether or not the requested relief should be granted requires a careful consideration of the following provisions of the Bankruptcy Code and of the Rules of Bankruptcy Procedure: Code sections 523(a)(3)(B) (exceptions to discharge) and 350(b) (reopening cases) and Bankruptcy Rule 906(b) (enlargement of time).

Section 523(a)(3) of the Code provides that a discharge does not discharge an individual debtor from any debt:

"neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit... (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.*" (emphasis added).

Because it has been stipulated that INA was not listed as a creditor in the bankruptcy schedules and never received any formal notice of the proceedings from the court, its claim would therefore be nondischargeable unless it had received actual knowledge of this case by other means.

Section 350(b) of the Code provides that "a case *may* be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause. Thus, while the bankruptcy court may reopen a case, it is not required to do so.

Bankruptcy Rule 906(b) authorizes the bankruptcy court to enlarge the time within which to file the complaint if made after the original cutoff date due to "excusable neglect."[2]

It is therefore incumbent upon this Court to consider the foregoing provisions in the light of the particular facts and circumstances involved.

■ From the records, files and proceedings, the Court is satisfied that, while INA did not receive notice from the Court, it did in fact have actual knowledge of the bankruptcy case. It is undisputed that a separate adversary proceeding between INA and the debtor arising out of this case had been commenced prior to the original cutoff date, but in connection with a separate claim. INA acknowledges that the same law firm which was representing it in connection with this application also had represented it in connection with the prior claim which has since been resolved. INA's argument that it lacked actual knowledge of the case under these particular circumstances, particularly where it has also been stipulated that an INA representative also had knowledge before the original cutoff date, draws an unenthusiastic response from this Court. An examination of the Code, Rules of Bankruptcy Procedure and case law all fail to produce any requirement on the part of the debtor to insure that one "with clear authority" to act on such knowledge must receive the notice of a bankruptcy case when the debtor has failed to list the particular corporate creditor in its schedules and/or master list filed with the Bankruptcy Clerk. There is no authority for any such distinction when, as in the instant case, a representative of the company as well as its attorneys knew of the bankruptcy case. The facts in *In the Matter of Robertson,* 13 B.R. 726 (Bkrtcy.E.D.Va. 1981) are distinguishable. In *Robertson,* there was notice of the bankruptcy case only to the creditor's attorney, unlike the instant case where there admittedly was notice both to the creditor's attorney and to a representative employed by the creditor before the original cutoff date. Further-

---

**2.** "(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court may at any time in its discretion (1) with or without application or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon application made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect...."

more, it is inconceivable that a law firm would have filed a complaint in a separate adversary case involving the debtor unless a representative of the creditor with authority to act for it had actual knowledge of the case and approved the commencement of the adversary proceedings.

*Collier on Bankruptcy,* 15th Ed., § 523.-13(5)(c) asserts:

"The sufficiency of notice to a creditor's attorney depends upon the nature and extent of the attorney's representation of his client. It is ordinarily considered sufficient if the attorney received knowledge of the case while representing the creditor in enforcing his claim against the debtor. Some courts, however, have held that notice to the attorney binds the creditor only when such notice is acquired by the attorney's representation of the creditor in the bankruptcy case."

This Court is satisfied, in view of the facts and circumstances presented, that notice to INA's law firm must be imputed to INA. The language in § 523(a)(3) requires a creditor have knowledge of the *case,* not of the *claim.* Such knowledge of the case by INA clearly was present to enable it to timely file a complaint declaring a debt nondischargeable against the debtor. In fact, this was done on April 16, 1980 in connection with another claim.

Having concluded that INA had actual knowledge of the bankruptcy case, this Court now focuses its attention upon the second contention asserted by INA: that it should, nevertheless, be permitted to file its complaint because it did not have an ample opportunity to participate in the bankruptcy proceedings. INA urges that "it is a very large corporation" and that any knowledge by any of its representatives was ineffective with respect to the claim now in issue. INA suggests that knowledge acquired by certain of its agents could not be imputed to the corporation as a whole because those agents had no authority, responsibility or knowledge regarding the claim which is the subject of the pending application. This argument is rejected. A corporation is said to have "composite knowledge", *i.e.,* knowledge of each of its individual agents taken together. 19 C.J.S. *Corporations,* § 1081, p. 619. The fact that INA emphasizes that it is a "very large corporation" only suggests a breakdown of internal procedures with respect to timely relaying of this knowledge of the bankruptcy case to the appropriate corporate officials charged with the responsibility of attending to these matters. It has been held that where a litigant's own internal procedures are the cause of the failure to comply with proper legal procedures, courts generally refuse to grant relief from the consequences of the lack of compliance. *In re Biddy,* 7 B.R. 50 (Bkrtcy.N.D.Ga.1980).

The drafters of the Bankruptcy Code intended that there be a finality of the bankruptcy proceedings as well as a granting to the debtor of a fresh start. Balancing these considerations against affording INA a reasonable opportunity to be heard, the particular circumstances weigh against the reopening of this case.

Accordingly, the application of INA is denied. This decision shall stand as and for findings of fact and conclusions of law in accordance with Rule 752 of the Federal Rules of Bankruptcy Procedure.