**In re Robert John PRICE, Debtor.**

**Roy E. LOMPA, Plaintiff/Appellee,**

v.

**Robert John PRICE,
Defendant/Appellant.**

BAP No. CC 86–2032 MoVJ.

Bankruptcy No. LA 86–05753–RM.

United States Bankruptcy Appellate Panels
of the Ninth Circuit.

Argued and Submitted July 23, 1987.

Decided Oct. 8, 1987.

Kenneth Jay Schwartz, Schwartz & Wilton, Encino, Cal., for defendant/appellant.

Michael P. Ring, Law Offices of Michael P. Ring, Santa Barbara, Cal., for plaintiff/appellee.

Before MOOREMAN, VOLINN and JONES, Bankruptcy Judges.

MOOREMAN, Bankruptcy Judge:

This appeal arises from an order by the bankruptcy court allowing the appellee/Lompa to file a nondischargeability complaint under section 523(c), after the bar date had passed.

### FACTS

As a basis for his nondischargeability complaint, the appellee alleges that he advanced $93,000 to the debtor based on certain misrepresentations. The underlying agreement between the parties was that the debtor would assist the appellee in obtaining certain "certificate of deposit financing" through a reputable company in order to purchase land in Australia. The appellee alleges that the debtor failed to obtain the financing and he lost the opportunity to purchase the land. The debtor failed to return the advanced funds.

In February, 1983, the appellee filed a complaint in state court alleging fraud and breach of contract. Three years later, on April 3, 1986, the debtor filed a Chapter 7 petition, but failed to schedule the appellee

as a creditor. The bar date for filing complaints to determine dischargeability was set for July 22, 1986. Although the appellee was not listed as a creditor, his attorney ("Mr. Ring") received a "Notice of Injunction" from the debtor's counsel on May 21, 1986, which notified Mr. Ring that the debtor had filed bankruptcy. There is no evidence of when the appellee was personally notified of the bankruptcy proceeding. However, Mr. Ring was representing the appellee in the underlying state court action and there is no dispute that he had authority to act for the appellee.

After receiving notice of the debtor's bankruptcy, Mr. Ring assumed his client had been properly scheduled and awaited notice of the deadline for filing a section 523(c) complaint. Because of the debtor's failure to list the appellee as a creditor, the notice under BR 4007(c) and BR 2002(f) was never sent to the appellee or to Mr. Ring.

On August 4, 1986, (13 days after the bar date had run), Mr. Ring called the debtor's counsel and learned that the filing date had passed. On August 25, 1986, the appellee filed his Motion for Leave to File a Late Complaint to Determine Dischargeability of Debt. At the hearing on the motion, the bankruptcy court found that the appellee did not receive notice of the bar date, that it was reasonable to assume that notice would be received and that the matter was "pursued in a reasonably timely matter." Based on these findings, the trial court granted the appellee's motion and the debtor appeals.

## DISCUSSION

The debtor argues that because Mr. Ring received actual notice of the bankruptcy petition in time to file a complaint, the trial court erred in granting the extension. The appellee initially argues the Panel lacks jurisdiction to hear this appeal from a "non-final order" and that the debtor failed to obtain "leave of the Court" to allow review of the order as interlocutory. The appellee alternatively argues that although notice of the bankruptcy was received in the form of a Notice of Injunction, it was reasonable to assume that notice of the bar date would be sent to the appellee and, therefore, the trial court did not err. The appellee further argues that his failure to file a timely complaint was "directly caused" by the debtor's failure to schedule him as a creditor and the debtor should not be "allowed to profit from his own negligence."

### I. Interlocutory Order

■ With regard to the appellee's initial argument that the Panel lacks jurisdiction to hear this appeal, Bankruptcy Rule 8003(c) provides for consideration of the notice of appeal as a motion for leave to appeal. Further, this Panel hereby grants review of this appeal based on the standards set forth in 28 U.S.C. § 1292(b), in that it involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation. Although section 1292(b) deals with appeals of interlocutory orders from district courts to courts of appeals, it is appropriate for this Panel to adopt such standards for appeals from the bankruptcy court. *See e.g. Matter of Bertoli*, 58 B.R. 992, 995 (D.N.J. 1986); *In re Johns-Manville Corp.*, 45 B.R. 833, 835 (S.D.N.Y.1984).

### II. Notice to Appellee's Attorney.

■ Assuming the creditor did not receive personal notice of the debtor's bankruptcy petition, the initial issue before this Panel is whether notice to a creditor's attorney of the bankruptcy proceeding is sufficient to constitute notice to the creditor. In addressing this issue, it is helpful to look to section 523(a)(3)(B) of the Bankruptcy Code which provides for an exception to discharge when the creditor does not receive notice of the bankruptcy proceedings. Section 523(a)(3)(B) excepts from discharge any debt not listed or scheduled in time to permit—

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor*

*had notice or actual knowledge* of the case in time for such filing and request.

11 U.S.C. § 523(a)(3)(B) (emphasis added).

The generally recognized rule was stated in *Maldonado v. Ramirez,* 37 B.R. 219 (D.V.I.1984). There the court stated:

> [n]otice or actual knowledge will be imputed to a creditor or claimant when it 'comes to someone who has clear authority to act for the creditor and which provides ample opportunity [for the creditor] to participate in the bankruptcy proceeding ...' *Matter of Robertson,* 13 B.R. 726, 733 (Bankr.E.D.Va.1981) *quoting Katz v. Kowalsky,* 296 Mich. 164, 295 N.W. 600, 604 (Mich.1941). Notice to a creditor's attorney of a bankruptcy filing is usually sufficient *if the attorney received knowledge of it while representing his client in enforcing a claim against the bankrupt.* [3 Collier on Bankruptcy, 15th Ed., § 523.15(5)(c) (1983)]. *See In re Saltzman,* 25 B.R. 125 (Bankr.E.D.Wis.1982); *Matter of Robertson, supra.*

*Id.* at 221 (emphasis added).

In the instant case, Mr. Ring was representing the appellee in the underlying state court action on the claim that the appellee now seeks to be declared nondischargeable. Mr. Ring has represented the appellee in these bankruptcy proceedings and does not dispute his authority to receive notice on behalf of the appellee. Based on these facts, notice to the appellee's attorney of the bankruptcy proceeding was sufficient for purposes of section 523(a)(3)(B) and for purposes of due process.

### III. Actual Notice Under Section 523(c).

We now turn to the next issue of whether a debtor's failure to schedule a creditor with actual notice of the bankruptcy will allow the unscheduled creditor to file a nondischargeability complaint under section 523(c) after the sixty-day time limitation pursuant to B.R. 4007(c) has passed.

It is now well recognized that a trial court has no discretion to grant untimely extensions to file section 523(c) complaints. *E.g. In re Hill,* 811 F.2d 484, 487 (9th Cir.1987); *In re Fauchier,* 71 B.R. 212, 216 (9th Cir.BAP 1986); *In re Rhodes,* 61 B.R. 626, 629–30 (9th Cir.BAP 1986); Bankr. Rules 9006 and 4007.

The appellee argues that because Bankruptcy Rule 4007(c) requires the court to send notice of the bar date to all creditors, his nondischargeability complaint should be allowed. In support of his contention the appellee cites the case of *In re Schwartz & Meyers,* 64 B.R. 948 (Bankr.S.D.N.Y.1986), which held that where notice of the deadline is lacking as required by Rule 4007(c), the sixty-day time period for filing a nondischargeability complaint is "not triggered." *Id.* at 955. Under this rationale, the bankruptcy court is not "extending" the time for filing a 523(c) complaint, rather, the sixty-day time limitation does not run until the "proper notice" is received.

The *Schwartz* case is, however, distinguishable from the instant case. In the *Schwartz* case, the initial notice distributed by the bankruptcy clerk failed to advise the creditors of the last day to file section 523(c) complaints. After the expiration of the sixty-day period, an amended notice was sent by the clerk giving the creditors another sixty days. The bankruptcy court determined that both B.R. 4007(c) and B.R. 2002(f) require that the *"court shall"* give not less than thirty days notice of the time fixed for filing a 523(c) complaint. 64 B.R. at 953 (emphasis added). The court further determined that where the creditors have relied in good faith, "the prejudice to them in denying their day in court outweighs the debtors' plights to obtain a discharge." *Id.* at 955. Finally the court determined that when notice of the deadline is lacking, the sixty-day time period is not triggered. *Id.*

The distinguishing fact in the *Schwartz* case is that the bankruptcy clerk failed in his duty to properly notify the *scheduled* creditors. *See also In re Riso,* 57 B.R. 789 (D.N.H.1986) (holding the creditor was allowed to rely on the clerk's incorrect calculation of the deadline for filing objections to discharge). In the instant case, however, the failure of the appellee to receive the notice pursuant to B.R. 4007 was not due to a bankruptcy clerk's error. Rather, the lack of the B.R. 4007 notice was the result of the debtor's failure to properly schedule the appellee and the appellee's

failure to insure protection of his claim by making an inquiry into the bankruptcy proceedings.

When confronted with a similar situation, a Florida bankruptcy court held that when the creditor had actual notice of the debtor's bankruptcy, but was not scheduled and, therefore, did not receive notice of the bar date under B.R. 4007, the creditor could not file a 523(c) complaint 13 days after the running of the bar date. *In re Alton*, 64 B.R. 221 (Bankr.M.D.Fla.1986). The *Alton* court, in rejecting the creditor's due process arguments, distinguished *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and stated:

> [i]t needs no elaborate discussion to point out the obvious, that everyone is supposed to know what the law is and is especially true if a party complaining about the lack of notice is an attorney, who actually was served with a notice of the pendency of the Chapter 11 case. Clearly he was charged with the duty to ascertain the rules which govern the rights of creditors to assert a claim of fraudulent conduct against the Debtor. Counsel for [the creditor] who was actively involved in the lawsuit against the Debtor in which he charged on behalf of the client, fraudulent conduct by the Debtor, should have immediately, upon learning that a bankruptcy case was pending involving the Debtor, researched and ascertained the importance of the intervening bankruptcy and the rights of his clients, in a bankruptcy case.

*Alton*, 64 B.R. at 224.

As in the *Alton* case, the appellee's attorney had been actively involved in the underlying lawsuit against the debtor charging fraudulent conduct, and also received *actual* notice of the bankruptcy proceeding with ample time to file a nondischargeability complaint.

In support of the concept that a creditor with actual notice of the bankruptcy proceeding is put on inquiry and must act to protect its interest, the Ninth Circuit Court of Appeals has stated:

> [w]hen the holder of a large unsecured claim ... receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or *inquiry notice* that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril.

*Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir.1983) (emphasis supplied).

The creditor in the *Gregory* case had received only the "Order for Meeting of Creditors," but did not receive a copy of the proposed plan of reorganization. Thus, when the debt was discharged, the creditor argued that the notice failed to meet constitutional due process standards. The *Gregory*, court stated:

> '[w]hatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it.' *D.C. Transit Systems, Inc. v. United States*, 531 F.Supp. 808, 812 (D.D.C.1982) (citations omitted).... If [the creditor] had made any inquiry following receipt of the notice, it would have discovered that it needed to act to protect its interest.

*Gregory*, 705 F.2d at 1123.

■ Although the *Gregory* case is not factually identical to the instant appeal, it supports the *Alton* court's holding (*supra* ) that an unscheduled creditor with actual notice of the bankruptcy must inquire as to the bar date for filing a nondischargeability complaint. Had the appellee/creditor inquired into the bankruptcy proceedings, he would have easily discovered that he was not scheduled and could have taken action to have his name placed on the schedule, thereby insuring the notice under BR 4007. Further, having sufficient notice of the bankruptcy proceeding, the appellee had "sufficient information to lead him to" the bar date, and thus, "he shall be deemed to be conversant of it." *Gregory*, 705 F.2d at 1123.

Recently, the Fifth Circuit has also held that a creditor with actual notice of the bankruptcy proceedings could not file a Section 523(c) complaint after the bar date

had passed, even though the "space for the deadline to file objections to dischargeability was left blank" in the 4007(c) notice sent by the bankruptcy clerk. *Neeley v. Murchison*, 15 BCD 1378 (5th Cir.1987). The *Neeley* court rejected the appellant/creditor's argument that the clerk's failure to give the 30-day notice under BR 4007(c) suspends the running of the 60-day limitation period. *Id.* at 1379.[1] The Fifth Circuit recognized that Section 523(c) "places a heavy burden on the creditor to protect his rights" and that, as in the instant case, the creditor had "more than ample opportunity to protect his rights under § 523(c)." *Id.* at 1379, 1380.

Section 523 of the Bankruptcy Code also supports the ruling that a creditor with actual notice of the bankruptcy must affirmatively protect his interest even when the debtor fails to schedule the creditor. Under section 523(a)(3)(B), an unscheduled creditor with a claim under subsection (2), (4), or (6) of 523(a), who receives notice of the bankruptcy in time to file a 523(c) complaint, is subject to discharge of that claim. In such cases, the creditor must act to preserve his claim and failure to do so will not allow the creditor to later claim due process has not been satisfied. In this case, the appellee received notice of the bankruptcy approximately three months prior to the deadline for filing a section 523(c) complaint.

Further evidence of the creditor's responsibility to inquire and investigate after receipt of actual notice can be found in the legislative history to section 523(c). It simply states, that "[s]ubsection (c) requires a creditor ... to initiate proceedings in the bankruptcy court for an exception to discharge. *If the creditor does not act, the debt is discharged.*" House Report No. 95–595, 95th Cong., 1st Sess. 365 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 80 (1978) U.S.Code Cong. & Admin. News 1978, pp. 5787, 5865, 6321 (emphasis added). The Advisory Committee Note to B.R. 4007(c) states that "[i]f a complaint is not timely filed, the debt is discharged."

Appellee, in support of the trial court's ruling allowing the untimely filing of the 523(c) complaint, also cites the case of *South Dakota Cement Plant v. Jimco Ready Mix Co.*, 57 B.R. 396 (D.S.D.1986). In the *Jimco* case, the District Court held that where a creditor failed to receive the required notice under Rule 4004(a) setting the time for filing objections to discharge, an untimely extension would be granted. The court stated:

> [debtor] argues that due to the [creditor's] extensive involvement in the case, it should have been on notice of the deadline, and apparently contends that the [creditor] was not prejudiced by the lack of formal notice. Debtor's argument must fail, however, because the Supreme Court has held that a creditor has a 'right to assume' he will receive all the notices required before his substantive rights are defeated. *City of New York v. New York, New Haven and Hartford Railroad Co.*, 344 U.S. 293, 296–97, 73 S.Ct. 299, 301 [97 L.Ed. 333] (1953); *Reliable Electric Co. v. Olson Construction Co.*, 726 F.2d 620 (10th Cir.1984).

*Id.* at 397.

The Supreme Court in the *City of New York* (*supra*) determined that under section 77 (Railroad Reorganization) of the Bankruptcy Act, a creditor who did not receive the required notice of the time limitation for filing a claim would not forfeit its liens. 344 U.S. at 294–97, 73 S.Ct. at 300–01. The Court rejected the argument that a creditor had a duty to inquire for themselves about possible court orders limiting the time for filing claims and stated, "even creditor's who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." *Id.* at 297, 73 S.Ct. at 301.

The distinguishing fact in the *City of New York* case and the case at bar is that under Railroad Reorganization, the time limitation for filing a claim was left to the

---

**1.** We recognize that notice requirements may in cases of obvious injustice warrant a different outcome; i.e. a clerk's "affirmative but erroneous notice of a bar date upon which the creditor might reasonably have relied." *Neeley,* 15 BCD at 1379 nt. 5. However, in the instant appeal, such is not the case.

discretion of the Bankruptcy Judge. Thus, imposing a duty upon the creditors to continually inquire into "possible court orders" was too burdensome. *Id.* A similar limitation on filing a claim was present in *Mullane (supra)*, in that the right to file a claim under Chapter X of the Act of 1898, was governed solely by an Order entered by the Reorganization Court who fixed the bar date for filing claims. In the instant case, however, the time limitation to file a nondischargeability complaint is not discretionary or subject to being set through court order. Bankruptcy Rule 4007(d) expressly requires that nondischargeability complaints must be filed within sixty days from the first date set for a meeting of creditors. Therefore, the responsibility to inquire into the deadline for filing a 523(c) complaint is not so burdensome as to outweigh the increasing need for the expeditious judicial administration of bankruptcy cases.

This Panel has recently stated, "as in *Rhodes*, [the creditor] had actual knowledge of the bankruptcy case. Such knowledge put him on inquiry notice as to the bankruptcy bar dates and deadlines." *In re Ricketts*, 80 B.R. 495 (9th Cir.BAP 1987).[2] In another BAP case, the Panel determined that "assuming arguendo that [the creditor] *did not receive actual notice from the court*, the complaint is still untimely." *Rhodes* 61 B.R. at 629 (emphasis added).

### CONCLUSION

The *Gregory* case as well as cases previously decided by the Bankruptcy Appellate Panel support the ruling that actual notice of the bankruptcy proceeding is sufficient to place a creditor on inquiry notice of the running of the bar date and satisfies due process requirements. The appellee, having actual notice of the debtor's bankruptcy, was responsible for protecting his claim and could have done so by inquiring into the bankruptcy proceedings and taking appropriate action. Because bankruptcy

courts no longer have discretion to grant untimely extensions for filing 523(c) complaints, the trial court erred in granting the appellee's motion for leave to file a late nondischargeability complaint.

Accordingly, the order of the trial court is REVERSED.

JONES, Bankruptcy Judge, concurring.

I concur in the decision reached by the majority in light of the Ninth Circuit's recent decision in *In re Hill*, 811 F.2d 484 (9th Cir.1987) and our recent decisions in *In re Rhodes*, 71 B.R. 206 (9th Cir.BAP 1987); *In re Fauchier*, 71 B.R. 212 (9th Cir.BAP 1987); and *In re Rhodes*, 61 B.R. 626 (9th Cir.BAP 1986). However, I reiterate my concern with the requirements of the Due Process Clause of the Federal Constitution in cases such as this. *See In re Ricketts*, 80 B.R. 495 (9th Cir. BAP 1987) (Jones, J., concurring).

---

**2.** In an analogous case decided by this Panel, the creditor's address was incorrectly listed and thus the creditor received no notice of the bar date until after it had passed. The Panel remanded the case to the trial court to determine whether the debtor had acted with due diligence in listing the creditor and whether the creditor had *actual notice* of the bankruptcy proceeding. *In re Fauchier*, 71 B.R. 212 (9th Cir.BAP 1987).